UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHN M.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:18-CV-00128-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney Dana Chris Madsen represents John M. (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

On June 11, 2015, Plaintiff filed an application for a period of disability and Disability Insurance Benefits, Tr. 20, 218-19, and an application for Supplemental Security Income benefits, Tr. 20, 220-25. Plaintiff alleged a disability onset date of June 28, 2013, Tr. 20, 218, 220, due to Chronic Pain, Chronic Neck Pain, Left Shoulder and Arm Pain, Degenerative Disc Disease, Chronic Tendinopathy, Vein

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

Issues, and Tingling in the Legs. Tr. 89, 287. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Mark Kim held a hearing on February 21, 2017, Tr. 39-86, and issued an unfavorable decision on April 6, 2017. Tr. 20-33. The Appeals Council denied review on February 16, 2018. Tr. 1-5. The ALJ's April 6, 2017, decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on April 17, 2018. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on December 9, 1969 and was 45 years old on the date the application was filed, June 11, 2015. Tr. 20, 89, 218, 220. Plaintiff earned a bachelor's degree in management information systems from Washington State University. Tr. 43, 70, 255. He was last employed in 2013 as a warehouse worker and testified that he only worked at that job for three days before he was in a motor vehicle accident. Tr. 68-69. Plaintiff testified that he also worked as computer desktop support for about a month, and as a cashier at Wal-Mart for about six months. Tr. 69. Plaintiff testified that he held numerous other jobs for short periods of time. Tr. 69-74.

Plaintiff reported that he is unable to work due to injuries that he received from a motor vehicle accident on June 28, 2013. Tr. 59, 257. He testified that, as a result of the accident, he incurred injuries to his neck, mid to lower back, left shoulder, and arm. Tr. 59. He testified that the injuries from the accident have gotten worse over the years. Tr. 60.

Plaintiff testified that his left shoulder is in pain all the time. Tr. 56. He testified that he has limited use of his left shoulder, and although he can reach

forward, he can only reach above his head with his right hand.  Tr. 55.  He testified that he does not lift with his left arm, but he can lift five or 10 pounds with his right arm.  Tr. 63.

Plaintiff testified that his back and neck are in pain all the time, even with medication.  Tr. 56.  He testified that he cannot walk one block because he does not have energy and has constant back pain.  Tr. 61.  He testified that he can bend about halfway if he is sitting in a chair but cannot stoop or squat because it is too painful.  Tr. 62.  He testified that he can sit in a chair for approximately four hours or less.  Tr. 64.  He testified that he uses a cane prescribed by the Department of Veterans Affairs (VA) hospital in order to get relief from the pressure on his spine.  Tr. 44, 57.  Plaintiff testified that he wears a back brace for support when he goes out.  Tr. 45, 60.

He also testified that he has recently been experiencing pain and numbness in his left leg, although he has not seen a doctor for his leg pain because he has not been able to get an appointment.  Tr. 57.  He testified that his leg is numb, tingly, and sometimes burns.  Tr. 61.  Plaintiff testified that he has trouble sleeping because he is in so much pain.  Tr. 64.  He testified that he has had migraine headaches since before the motor vehicle accident.  Tr. 65.  The migraine headaches last anywhere from half a day to a couple of days and he cannot see, stand, or concentrate when he gets one of these headaches.  Tr. 65.

He testified that physical therapy only helped temporarily and chiropractic treatment did not help.  Tr. 64.  Plaintiff testified that he had an injection in his left shoulder but the injection made his shoulder worse.  Tr. 58-59.

Plaintiff testified that he suffers from depression caused by mental, physical, and verbal abuse that he experienced during the six months that he served in the U.S. Navy.  Tr. 58.  Plaintiff testified that he tried to kill himself during his service, and he received an honorable medical discharge.  Tr. 58-59.  Plaintiff testified that he also tried to kill himself the year before the administrative hearing.  Tr. 59.  He

testified that he had been receiving regular mental health counseling but he stopped treatment. Tr. 44, 67. In his June 2015 Function Report, Plaintiff noted that he is able to pay attention for about four hours and he follows written and spoken instructions well. Tr. 262-63. He reported that he gets along well with authority figures and does not have any problems getting along with family, friends, neighbors, or others. Tr. 262-63.

Plaintiff lives alone in an apartment. Tr. 43, 257. He testified that he is not able to drive a car. Tr. 57, 65. Plaintiff testified that he does not do chores and does laundry approximately once every six months or once every year. Tr. 56, 67. He testified that he cooks his meals in the microwave, and he cannot go grocery shopping because he has someone do that for him. Tr. 56, 67.

Medical expert John Kwock, M.D., testified at the administrative hearing that Plaintiff was capable of light work. Tr. 45-53. Dr. Kwock testified that Plaintiff has degenerative disc and degenerative joint disease of the cervical spine of a relatively mild degree, Tr. 46, as well as degenerative disc and degenerative joint disease of the lumbar spine of a relatively mild extent. Tr. 46. Dr. Kwock testified that the findings in the radiological studies suggest that the degenerative changes that Plaintiff has in the cervical spine are relatively mild and in low grade as far as intensities are concerned. Tr. 46-47 (citing Tr. 737, 762-63, 766, 991, 779). He testified that the terms used in the examination results for Plaintiff's lumbar spine noted minimal degenerative changes. Tr. 48. Dr. Kwock testified that Plaintiff had tendonitis in his left shoulder four years prior to the hearing, but there was no further evidence in the record that the tendonitis remained. Tr. 46. He testified that Plaintiff's shoulder was documented in x-rays and an MRI done in December 2013, and the radiologist described the tendinopathy in the supraspinatus tendon as moderately severe. Tr. 48. He testified that there were no subsequent radiological studies of the shoulder to document the extent of the tendonitis that was present back in 2013. Tr. 48.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the

claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On April 6, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, June 28, 2013. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairments: cervical and lumbar spine degenerative disc disease, left shoulder tendinitis, depressive disorder, and anxiety disorder. Tr. 22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 22.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined that he could perform sedentary work, except that: he can lift and carry 10 pounds occasionally; he has no limitations to standing, walking, or sitting; he must be allowed to alternate from sit to stand position on an hour [sic] basis for five to 10 minutes; he can never crawl or climb ladders, ropes, or scaffolds; he can occasionally stoop, crouch, and climb ramps and stairs; he can never reach overhead with his non-dominant left upper extremity; he should avoid all exposure to extreme cold and unprotected heights; he can perform simple routine tasks due to both physical and mental impairments; and he can perform work involving occasional interaction with the public. Tr. 24.

At step four, the ALJ determined Plaintiff was unable to perform any past relevant work. Tr. 30.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, and based on the testimony of the vocational expert (VE), Plaintiff could perform other jobs present in significant numbers in the national economy, including the light exertion level jobs of mail clerk, office helper, and small parts assembler. Tr. 31-32. The ALJ thus concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from June 28, 2013, through the date of the ALJ's decision, April 6, 2017. Tr. 32.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) improperly discrediting Plaintiff's symptom claims; and (2) failing to properly consider and weigh the opinion evidence. ECF No. 14 at 17. Additionally, Plaintiff argues that these errors are harmful and a remand for an immediate award of benefits is warranted. ECF No. 14 at 19-21.

## DISCUSSION[1]

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

## A. Plaintiff's Symptom Testimony

Plaintiff contends the ALJ erred by improperly discrediting his symptom complaints. ECF No. 14 at 17-18. It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. In considering Plaintiff's symptoms, the ALJ must follow a two-step analysis. *Lingerfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether there is objective evidence of an underlying impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. *Id.* at 1036 (quotation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*; citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "General findings are insufficient: rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 25.

Plaintiff argues that the ALJ erred by discounting his symptom claims based solely on a lack of objective medical evidence. ECF No. 14 at 18. Plaintiff correctly contends that an ALJ may not make a negative credibility finding solely because a claimant's symptom testimony is not fully corroborated by objective medical evidence. ECF No. 14 at 18; citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883-84 (9th Cir. 2006). However, the ALJ did not discount Plaintiff's symptom testimony solely because it was inconsistent with the objective medical evidence. Rather, the ALJ discussed the following reasons for discrediting

Plaintiff's symptom testimony: (1) inconsistencies with medical evidence; (2) evidence of exaggeration; (3) improvement with treatment; (4) non-compliance with medical advice; and (5) minimal mental health therapy and medication management. Tr. 25-28. The ALJ provided specific examples of each. *Id.*

### 1. Inconsistent with Medical Evidence

The ALJ found that Plaintiff's subjective symptom complaints were not supported by the medical evidence. Tr. 25. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Medical evidence is a relevant factor, however, in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ found that Plaintiff's allegations of disabling pain were not consistent with the rather mild findings and conservative treatment documented in Plaintiff's medical record. Tr. 25. Plaintiff testified that he was unable to work due to neck, mid to lower back, left shoulder, and arm injuries from a June 2013 motor vehicle accident. Tr. 59-60. However, Plaintiff's medical records show that physical examinations and objective testing done immediately after the motor vehicle accident, and approximately one week later, mainly documented mild injuries. Tr. 25; *see, e.g.*, Tr. 377-78 (Plaintiff's lumbar spine x-ray showed no vertebral body wedge deformity and minimal degenerative changes at L4-5 and L4-S1, and his cervical spine x-ray showed no acute displaced fracture or dislocation); Tr. 380 (Plaintiff was diagnosed with cervical and lumbar sprains and discharged the same day in stable condition with prescription medication); Tr. 383

(Plaintiff had some cervical muscular tenderness on palpation and he had full range of motion with discomfort); Tr. 383-84 (Plaintiff exhibited muscle spasms in the lumbar and sacral regions, but he had two plus deep tendon reflexes in all extremities and equal and strong grip strength); Tr. 382, 387 (Plaintiff's cervical MRI indicated no evidence of fracture and mild degenerative disc disease with no evidence of neural compression); Tr. 388 (Plaintiff exhibited cervical tenderness and pain with range of motion of his shoulders, but he had no arm paresthesias, no weakness, and he had a good grip strength).

Plaintiff testified that his injuries from the motor vehicle accident worsened over the years, and his left shoulder, neck, and back are in constant pain. Tr. 55-56, 60. However, as determined by the ALJ, Plaintiff's physical examinations and objective testing throughout the record largely reveal mild impairments. *See, e.g.*, Tr. 393 (upon examination at the end of July 2013, Plaintiff exhibited left paraspinous cervical muscle tenderness, he had full range of motion of his arms, a normal straight leg raise, and equal strength to the lower legs); Tr. 514-18 (upon examination in November 2013, Patrick Soto, M.D. found Plaintiff's cervical range of motion was mildly impaired and he exhibited tenderness of his paraspinal muscles, his left shoulder had tenderness and decreased range of motion and strength, and he concluded that Plaintiff had no serious spinal pathology based on imaging results and examination, but that he might be developing chronic pain condition and there might be some left shoulder pathology); Tr. 530-33 (Plaintiff reported in December 2013 that although he continued to have shoulder pain, his neck pain had resolved and his low back pain was episodic); Tr. 48, 535, 540, 760 (Plaintiff's shoulder MRI in December 2013 indicated moderate to severe tendinopathy in the left distal supraspinatus tendon, but Dr. Kwock testified at the administrative hearing that there were no subsequent radiological studies of the shoulder to document the extent of the tendonitis that was present in 2013); Tr. 1019-22 (upon examination by his primary care giver in October 2014, Plaintiff

exhibited spine tenderness and decreased range of motion, but he exhibited normal motor strength, sensation, and reflexes).

Plaintiff testified that he was unable to grasp an empty plastic plate, and he could only lift his left arm up about halfway. Tr. 62-63. He testified that he could not even walk one block because of constant back pain and he did not have energy, he could not bend down if standing, and could bend only about halfway if sitting in a chair. Tr. 61-62. However, Plaintiff's physical examinations contradicted these severe limitations. *See, e.g.*, Tr. 793-96, 892 (although Plaintiff exhibited decreased cervical and lumbar range of motion during a chiropractic re-examination in March 2016, he continued to present with a normal gait and station); Tr. 1178 (treatment notes from August 2016 indicated that Plaintiff could move all extremities within normal limits, he had bilateral equal grip strength, and his strength was five out of five in all extremities).

As indicated by the ALJ, the medical evidence of record does not support the disabling symptoms and limitations alleged by Plaintiff in this case. Tr. 26-28. This was a proper basis for the ALJ to discredit Plaintiff's symptom testimony. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Rollins*, 261 F.3d at 857.

### 2. Exaggeration

The ALJ discounted Plaintiff's symptom claims due to evidence that he exaggerated his symptoms during a functional evaluation. Tr. 27. The tendency to exaggerate provides a permissible reason to discount a claimant's symptom claims. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (The ALJ appropriately considered claimant's tendency to exaggerate when assessing claimant's symptom claims, which was shown in a doctor's observation that claimant was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work.).

As the ALJ noted, a rehabilitation functional evaluator deemed Plaintiff's functional evaluation results in January 2015 to be invalid because of Plaintiff's

very poor effort. Tr. 27 (citing Tr. 757). The evaluator noted that Plaintiff exhibited overt symptom exaggeration behavior. Tr. 728. Plaintiff scored three out of five by Waddell's protocol, and he passed only 32 out of 50 validity criteria during the functional evaluation, which suggests a very poor effort. Tr. 728. The evaluator noted that this was thought to represent a conscious effort to demonstrate a greater level of pain and disability than actually present. Tr. 728. Because the rehabilitation functional evaluator determined that Plaintiff exaggerated his symptoms, the ALJ properly considered this evidence when discounting Plaintiff's symptom claims and this finding is supported by substantial evidence.

### 3. Improvement with Treatment

The ALJ found that Plaintiff's physical impairments improved with treatment. Tr. 26. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). The ALJ noted that Plaintiff presented for 12 physical therapy sessions for his back and neck pain from August 2013 to November 2013, and he reported some improvement with movement, riding in a car, and sitting and walking tolerances.[2] Tr. 26 (citing Tr. 507). In November 2013, Plaintiff began a course of chiropractic, spinal rehabilitation, and therapy modalities at the Spokane Spine Center. Tr. 526-27. The next month, Plaintiff reported to his provider at the Spokane Spine Center that he continued to have shoulder pain, but his neck pain had resolved and his low back pain was episodic, in that it was rated four out of 10 in severity and it occurred three to four times a week. Tr. 533. The ALJ also indicated that in May

---

[2] The progress note cited by the ALJ stated that Plaintiff presented for 10 physical therapy sessions between September 2013 and October 2013. Tr. 507.

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

2015, Plaintiff started acupuncture and he exhibited a stiff gait, but he reported some benefit. Tr. 27 (citing Tr. 969, 980, 983, 1001-02).

Despite these treatment notes showing improvement, Plaintiff reported in January 2014 that he was going to stop physical therapy because it was no benefit to him. Tr. 553. A treatment note from a different provider that same month reported that Plaintiff could not afford to continue physical therapy. Tr. 536. Disability benefits may not be denied because of a claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). However, "[w]here evidence is subject to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679. Plaintiff testified that physical therapy only helped temporarily and chiropractic treatment did not help. Tr. 64. Plaintiff reported to his physical therapist in January 2014 that he felt he was not getting any benefit from physical therapy and wished to stop treatments at that time. Tr. 553. The ALJ reasonably interpreted the record as demonstrating that Plaintiff's conditions improved with treatment, which is a clear and convincing reason to find his symptom complaints less credible.

### 4. Non-Compliance with Medical Advice

The ALJ considered Plaintiff's non-compliance with medical advice in discounting his symptom claims. Tr. 26-27. It is well-established that unexplained or inadequately explained non-compliance with treatment reflects on a claimant's credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012); *Tommasetti*, 533 F.3d at 1039; *see also Smolen*, 80 F.3d at 1284 (an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility). Here, the ALJ noted that Plaintiff requested a back brace, even though his provider recommended that he not use a back brace as they are associated with worsening of

back pain and they allow the muscles to weaken and destabilize. Tr. 27 (citing Tr. 1020). Despite this advice, Plaintiff continued to wear a back brace. Tr. 937, 969.

Plaintiff's non-compliance with medical advice was a proper basis for the ALJ to discredit Plaintiff's symptom testimony. *Parra*, 481 F.3d at 750-51; *Rollins*, 261 F.3d at 857.

### 5. Minimal Mental Health Treatment and Medication Management

The ALJ discounted Plaintiff's reported mental health symptoms because of his minimal mental health therapy and medication management. Tr. 27-28. As discussed *supra*, an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Evidence of self-limitation and lack of motivation by a claimant are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, the ALJ found that the record reflected Plaintiff showed a resistance to engage in mental health therapy despite his allegations of disabling mental impairments. Tr. 27. The ALJ noted that Plaintiff presented to several different therapists during 2016, but no matter the therapy technique employed, Plaintiff remained resistant to engaging. Tr. 27-28; *see, e.g.*, Tr. 1164 (Plaintiff presented for his last medication management appointment in August 2016 and was

unwilling to engage with the provider, his responses to questions were silence or "I don't know," and he refused inpatient treatment); Tr. 900, 902, 909, 918, 920 (Plaintiff complained about his anger with the system and he expressed hopelessness and depression); Tr. 804, 812 (at times, Plaintiff was argumentative when even slightly challenged); Tr. 818, 825, 833, 846, 854, 1187 (Plaintiff represented with minimal eye contact, guarded and resistant to sharing openly); Tr. 1187 (Plaintiff's therapist noted that he remained at baseline in July 2016 and continued to refuse to engage or consider any inpatient treatment); Tr. 1110 (Plaintiff presented to Frontier Behavioral Health in July 2016 for counseling, partially because he believed that he could obtain an unlimited bus pass). The ALJ did not cite to any evidence suggesting that Plaintiff's failure to participate in treatment was attributable to a mental impairment rather than a personal preference, and thus, it was reasonable for the ALJ to conclude from this record that Plaintiff's minimal mental health therapy was inconsistent with the alleged severity of his complaints. *Molina*, 674 F.3d at 1113-14.

      The ALJ also found that the record reflected Plaintiff showed a resistance to take prescribed medication. Tr. 27. While the Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence to determine that Plaintiff showed an unwillingness or hesitancy to engage in mental health therapy, the ALJ failed to do the same regarding Plaintiff's medication management. While an unexplained, or inadequately explained, failure to follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms, *Orn*, 495 F.3d at 638, a review of the record cited by the ALJ reveals that Plaintiff was hesitant to engage in medication management due to alleged side effects and concerns about side effects. Tr. 27-28; *see, e.g.*, Tr. 820 (Plaintiff reported the medication made him dizzy and light headed, and made his lips tingle); Tr. 828 (Plaintiff reported that his headaches diminished when he ran out of his medication); Tr. 848 (Plaintiff reported that he thought one of the medications was

causing night terrors); Tr. 866 (Plaintiff reported flashbacks to incidents that occurred during his service and he was not experiencing these flashbacks before the medications, as he did not feel aware of his trauma and its impact on his life); Tr. 899 (Plaintiff reported negative side effects from taking Zoloft and was instructed to stop taking the medication and contact the clinic if the headaches, nausea, muscle stiffness and twitching did not subside after a few days); Tr. 904 (Plaintiff reported numerous side effects from the medication, including increased migraines, dry mouth, increased constipation, nausea, increased anger, and increased use of profanity); Tr. 806 (Plaintiff requested only a medication for sleep and he opined that he was better off the medications).

The Court finds that the ALJ provided specific, clear and convincing reasons supported by substantial evidence to discount Plaintiff's symptom claims based on his minimal mental health treatment. Although the Court finds that the ALJ erred by discounting Plaintiff's symptom claims due to his medication management, it was harmless error because the ALJ asserted another specific, clear and convincing reason to discount Plaintiff's symptom claims. As discussed *supra*, this reason was supported by substantial evidence. *See Johnson v. Shalala,* 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995) (an error is harmless when the correction of that error would not alter the result); *Burch,* 400 F.3d at 679 (an ALJ's decision will not be reversed for errors that are harmless).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 399-400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing

reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

**B.    Medical Source Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the opinion evidence. ECF No. 14 at 18-19. In his opening brief, Plaintiff provides the Court with two sentences of argument. ECF No. 14 at 19. Plaintiff asserts that the treatment records of the VA Hospital, as well as other clinics where he received treatment, all indicate that he has severe physical and mental symptoms and limitations. ECF No. 14 at 19. Plaintiff contends the opinions of Dr. Arnold and Dr. Davis are unrebutted. ECF No. 14 at 19.

Beyond these bare assertions, Plaintiff fails to assert any argument as to why the ALJ erred in weighing the medical source opinions. Therefore, Plaintiff waived the argument. *See Carmickle*, 533 F.3d at 1161 n.2. The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[3] Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to challenge the issue in his opening brief, the Court declines to consider this issue.

The Court will not disturb the ALJ's determination regarding the medical source opinions.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision should be affirmed. Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED April 18, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

---

[3] Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

ORDER GRANTING DEFENDANT'S MOTION . . . - 18